IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO.

NATURE'S PRODUCTS, INC.,

    Plaintiffs,

v.

NATROL, INC. and
FCC PRODUCTS, INC.,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Nature's Products, Inc. ("NPI"), sues Defendants, Natrol, Inc. ("Natrol") and FCC Products, Inc. ("FCC Products"), and states:

### Parties, Jurisdiction, and Venue

1.    This is an action for damages for breach of contract, breach of warranty and violation of the Florida Deceptive and Unfair Trade Practices Act in connection with the purchase and sale of consumer healthcare products.

2.    NPI is a Florida corporation with its principal place of business in Broward County, Florida.

3.    Natrol is a Delaware corporation with its principal place of business in Chatsworth, California.

4.    FCC Products is a New Jersey corporation with its principal place of business in Livingston, New Jersey.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest, fees, and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the causes of action herein occurred in the Southern District of Florida.

**General Allegations**

7. NPI is a global manufacturer and distributor of consumer healthcare products.

8. Natrol is a company that develops and markets nutrition products under various brands, including the Prolab® brand for the sports nutrition market.

9. FCC Products is an ingredient supplier of bulk raw materials to product manufactures in the healthcare industry.

10. Beginning in 2008, NPI began ordering bulk raw materials from FCC Products to be used to manufacture dietary supplements.

11. With each order, NPI requested that FCC Products provide, among other things, a "Certificate of Analysis" of the raw materials being supplied.

12. In or around September, 2009, Natrol asked NPI to manufacture, label and package dietary supplements for its Prolab® brand. Natrol provided NPI the labels for the Prolab® brand products that a prior manufacturer had used for the same products that NPI was being asked to manufacture.

13. Some of the dietary supplements that Natrol requested NPI to manufacture included the raw material Glutamine Peptide powder as an ingredient. The label provided by Natrol stated

that those supplements which included Glutamine Peptide powder as an ingredient contained no wheat and gluten allergens.

14. In order to ensure that the labeling of the finished supplements would be compliant with United States Federal and Drug Administration ("USFDA") standards, NPI requested that FCC Products certify whether its Glutamine Peptide powder contained any wheat or gluten allergens.

15. On or around October 7, 2009, NPI received an Allergen Report from FCC Products for the Glutamine Peptide powder. The Allergen Report stated that the powder was allergen free, including that it was free of any wheat or gluten allergens.

16. Consistent with the Allergen Report, none of the Certificates of Analysis previously provided by FCC Products stated that the Glutamine Peptide powder contained wheat or gluten allergens.

17. As a result, NPI sent purchase orders to FCC Products to obtain the raw materials, including Glutamine Peptide powder, to manufacture the Prolab® brand supplements.

18. Beginning in 2010, NPI began to manufacture the dietary supplements for Natrol's Prolab® brand according to detailed product specifications provided by Natrol.

19. For those dietary supplements containing the Glutamine Peptide powder, the labels included a "No Wheat" claim in accordance with FCC Products' certification that it was free of wheat allergens.

20. The finished Prolab® brand dietary supplements and labels provided by NPI were accepted and approved by Natrol.

21. NPI sent Natrol invoices for all Prolab® brand products it manufactured for Natrol.

22. NPI also manufactured dietary supplements containing the Glutamine Peptide powder purchased from FCC Products to other distributors and labeled them according to FCC Products' certifications.

23. In or around August, 2011, NPI learned that FCC Products' certifications that the Glutamine Peptide powder contained no wheat or gluten were false. Both the USFDA and NPI conducted testing on the supplements containing the Glutamine Peptide powder and found that both contained wheat and gluten allergens.

24. The USFDA requested that all dietary supplements manufactured by NPI containing the Glutamine Peptide powder be recalled to correct the labels.

25. NPI immediately ceased production of the recalled supplements and informed its vendors which had purchased the recalled products of the need to change labels as a result of the false certifications by FCC Products relating to allergens.

26. NPI has offered to provide Natrol revised labels stating that wheat and gluten are contained in the products. However, Natrol has not accepted the offer.

27. Notwithstanding its obligations to pay NPI's invoices for all products sold and delivered to it, Natrol refuses to pay any of NPI's outstanding invoices for products it manufactured for the Prolab® brand regardless of whether they relate to the recalled products.

## COUNT I
## Breach of Contract
### (Natrol)

28. NPI realleges Paragraphs 1 through 27.

29. Natrol offered NPI the opportunity to manufacture, label and package dietary supplements in return for payment.

30. NPI accepted Natrol's offer and manufactured the dietary supplements according to the product specifications and instructions provided.

31. Natrol accepted and approved the finished Prolab® brand dietary supplements and labels.

32. NPI sent Natrol invoices seeking payment for NPI's services and products.

33. Natrol breached the contract by failing to pay for NPI's services and products.

34. Natrol refused to pay any of NPI's outstanding invoices regardless of whether they relate to the recalled products.

35. As a direct and proximate result of the breach, NPI has suffered costs and damages.

36. As of November 8, 2011, Natrol owes NPI $1,025,398.73, excluding interest, for the finished products. Of that amount, $747,433.93 is owed for products unaffected by the USFDA recall.

WHEREFORE, Plaintiff, Nature's Products, Inc., requests that the Court enter judgment in its favor and against Defendant, Natrol Inc., for all damages it incurred as a result of the breach, including incidental and consequential damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and such further relief as the Court deems appropriate.

### COUNT II
### Unjust Enrichment
### (Natrol)

37. NPI realleges Paragraphs 1 through 27.

38. NPI conferred a benefit on Natrol, which has benefited and continues to benefit from the services provided by NPI to manufacture dietary supplements.

39. It would be inequitable for Natrol to retain the benefit of receiving finished products without paying for same.

40. Natrol will be unjustly enriched if it is not required to pay the value of the products and services provided by NPI to Natrol.

WHEREFORE, Plaintiff, Nature's Products, Inc., requests that the Court enter judgment in its favor and against Defendant, Natrol Inc., for all damages it incurred as a result of the unjust enrichment, including pre-judgment and post-judgment interest, attorneys' fees and costs, and such further relief as the Court deems appropriate.

## COUNT III
### Breach of Contract
### (FCC Products)

41. NPI realleges Paragraphs 1 through 27.

42. FCC Products represented to NPI that its Glutamine Peptide powder was suitable for sale as an ingredient for dietary supplements that were to contain no wheat or gluten allergens.

43. NPI purchased Glutamine Peptide powder in bulk form with FCC Products' certification that the powder did not contain either wheat or gluten allergens.

44. FCC Products breached the contract by providing Glutamine Peptide powder that contained wheat and gluten allergens.

45. As a direct and proximate result of the breach, NPI has suffered costs and damages.

WHEREFORE, Plaintiff, Nature's Products, Inc., requests that the Court enter judgment in its favor and against Defendant, FCC Products, Inc., for all damages it incurred as a result of the breach, including incidental and consequential damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and such further relief as the Court deems appropriate.

## COUNT IV
### Breach of Express Warranty
### (FCC Products)

46. NPI realleges Paragraphs 1 through 27.

47. FCC Products represented to NPI that its Glutamine Peptide powder was suitable for sale as an ingredient for dietary supplements that were to contain no wheat or gluten allergens.

48. NPI purchased Glutamine Peptide powder in bulk form from FCC Products with the warranty that the powder did not contain either wheat or gluten allergens.

49. FCC Products breached the express warranty by providing Glutamine Peptide powder that contained wheat and gluten allergens.

50. Such defects were only discovered after the finished products were sealed, packaged and shipped to distributors.

51. NPI provided immediate and timely notice of the breach to FCC Products.

52. As a direct and proximate result of the breach, NPI has suffered damages.

53. NPI made demand on FCC Products to pay its damages but FCC Products has failed and refused to pay.

54. All conditions precedent to the bringing of this action have been satisfied, have occurred, or have been waived.

WHEREFORE, Plaintiff, Nature's Products, Inc., requests that the Court enter judgment in its favor and against Defendant, FCC Products, Inc., for all damages it incurred as a result of the breach, including incidental and consequential damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and such further relief as the Court deems appropriate.

### COUNT V
### Breach of Implied Warranty of Merchantability
### (FCC Products)

55. NPI realleges Paragraphs 1 through 27.

56. FCC Products agreed to sell Glutamine Peptide powder that was suitable for sale as an ingredient for dietary supplements that were to contain no wheat or gluten allergens.

57. FCC Products' sale of the Glutamine Peptide powder created an implied warranty of merchantability that it was free of wheat or gluten allergens.

58. FCC Products, which is in the business of manufacturing and selling bulk raw materials for dietary supplements, warranted that the Glutamine Peptide powder was merchantable as an ingredient for dietary supplements free of wheat or gluten allergens.

59. FCC Products breached its implied warranty of merchantability by providing the Glutamine Peptide powder that contained wheat and gluten allergens. Such defects were only discovered after the finished products were sealed, packaged and shipped to distributors.

60. NPI provided immediate and timely notice of the breach to FCC Products.

61. As a direct and proximate result of the breach, NPI has suffered damages.

62. NPI made demand on FCC Products to pay its damages but FCC Products has failed and refused to pay.

63. All conditions precedent to the bringing of this action have been satisfied, have occurred, or have been waived.

WHEREFORE, Plaintiff, Nature's Products, Inc., requests that the Court enter judgment in its favor and against Defendant, FCC Products, Inc., for all damages it incurred as a result of the breach, including incidental and consequential damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and such further relief as the Court deems appropriate.

### COUNT VI
### Breach of Implied Warranty of Fitness for a Particular Purpose
### (FCC Products)

64. NPI realleges Paragraphs 1 through 27.

65. FCC Products agreed to sell Glutamine Peptide powder that was suitable for sale as an ingredient for dietary supplements that were to contain no wheat or gluten allergens.

66. FCC Products' sale of the Glutamine Peptide powder created an implied warranty of fitness for a particular purpose.

67. At the time of contracting, FCC Products had reason to know the particular purpose for which the Glutamine Peptide powder was purchased and that NPI was relying on FCC Products' skill or judgment to furnish suitable goods.

68. FCC Products, which is in the business of manufacturing and selling bulk raw materials for dietary supplements, warranted that the Glutamine Peptide powder was fit for the particular purpose for which it was used.

69. FCC Products breached its implied warranties by providing Glutamine Peptide powder that was not free of wheat or gluten and was not fit for its intended purpose. Such defects were only discovered after the finished products were sealed, packaged and shipped to distributors.

70. NPI provided immediate and timely notice of the breach to FCC Products.

71. As a direct and proximate result of the breach, NPI has suffered damages.

72. NPI made demand on FCC Products to pay its damages but FCC Products has failed and refused to pay.

73. All conditions precedent to the bringing of this action have been satisfied, have occurred, or have been waived.

WHEREFORE, Plaintiff, Nature's Products, Inc., requests that the Court enter judgment in its favor and against Defendant, FCC Products, Inc., for all damages it incurred as a result of the breach, including incidental and consequential damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and such further relief as the Court deems appropriate.

## COUNT VII
### Breach of Florida Deceptive and Unfair Trade Practices Act
### (FCC Products)

74. NPI realleges Paragraphs 1 through 27.

75. FCC Products misrepresented to NPI that the Glutamine Peptide powder it was purchasing was free of wheat or gluten allergens.

76. FCC Products' misrepresentations to NPI regarding the allergen content of the Glutamine Peptide powder constituted a false, deceptive and unfair act in violation of the Florida Deceptive and Unfair Trade Practices Act, § 501.201 *et seq.*, Fla. Stat. (2011).

77. NPI relied on FCC Products' misrepresentations and has suffered, and continues to suffer, actual damages as a proximate result of FCC Products' misrepresentations.

WHEREFORE, Plaintiff, Nature's Products, Inc., requests that the Court enter judgment in its favor and against Defendant, FCC Products, Inc., for all damages it incurred as a result of the violation, including pre-judgment and post-judgment interest, attorneys' fees and costs, and such further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all triable issues.

DATED: November 10, 2011.

*s/ Alan Rosenthal*
Alan Rosenthal
Florida Bar No. 220833
arosenthal@carltonfields.com
Natalie J. Carlos
Florida Bar No. 0146269
ncarlos@carltonfields.com
Carlton Fields, P.A.
Suite 4200
100 S.E. Second Street
Miami, Florida 33131
Telephone:  305-530-0050
Facsimile:  305-530-0055